SO ORDERED.

SIGNED this 14th day of May, 2025.



_____
Dale L. Somers
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

BRANDON HUMBERTO
ESTANOL and ALEXANDRIA
PAIGE ESTANOL,

Case No. 24-40454
Chapter 13

Debtor(s).

**<u>Memorandum Opinion and Order Denying Counsel's Application for
Return of Pre-confirmation Funds and Preservation of
Attorney Lien Rights</u>**

Counsel for Chapter 13 joint debtors Brandon Humberto Estanol and

Alexandria Paige Estanol filed a notice of attorney's lien and application for

return of pre-confirmation funds and preservation of attorney lien rights.[1] Counsel asserts a lien on Debtors' pre-confirmation plan payments made pursuant to 11 U.S.C. § 1326(a)(1),[2] and seeks "return" of the pre-confirmation undisbursed funds to him as Debtors' authorized representative.[3] In the alternative, if the pre-confirmation funds are not disbursed to him, Counsel requests a notation on the negotiable instrument remitting the funds to Debtors that acknowledges his lien on the funds. The Chapter 13 Trustee, Carl Davis, and Debtors, acting pro se, both filed objections to Counsel's application.[4]

The Court denies Counsel's application for return of pre-confirmation funds. Counsel's attorney's lien is void as it was perfected in violation of the automatic stay. Even if the lien is not void, Counsel is not entitled to fees or expenses as Debtors' plan is unconfirmed and therefore no fees or expenses have been awarded under the plan and no separate application has been approved by the Court. However, the Court will allow Counsel fifteen days from the date of entry of this Order to file an application for compensation that satisfies the process set forth for allowance of professional fees as

---

[1] Debtors are represented by attorney Adam Mack.
[2] All future statutory references herein are to the Bankruptcy Code, title 11, unless otherwise specified.
[3] Docs. 29, 30. Counsel's application is incorrectly docketed as an "application for compensation," but is titled as indicated herein.
[4] Docs. 33, 35.

2

administrative expenses under §§ 330(a) and 503(a). If administrative claims are allowed in accordance with § 503(b), they should be deducted from the pre-confirmation funds held by the Trustee and then the remaining funds, if any, should be returned to Debtors in accordance with § 1326(a)(2).

## I.    Facts and Procedural History

Debtors filed their Chapter 13 case on July 5, 2024. A few days later, on July 8, 2024, Debtors filed their Chapter 13 plan, in which Debtors proposed to make monthly plan payments of $2,520 for 36-months (three years). Counsel's attorney fees and costs in the amount of $4,344.95 were to be paid through the plan as an allowed administrative claim. On the same day Debtors filed their plan, an Order was issued directing Debtors to begin paying their monthly plan payments to the Trustee pursuant to § 1326(a)(1).[5]

On August 13, 2024, the Trustee filed an objection to confirmation of the proposed plan.[6] At the hearing, Debtors indicated they would file an amended plan to resolve the Trustee's objection. The confirmation hearing was continued three times for Debtors to do so. But, after three months of waiting for the amended plan, the Court at the hearing on November 20, 2024, set a deadline of one week for Debtors to submit the amended plan or

---

[5] Doc. 11.
[6] Doc. 21.

3

the Trustee could upload an order dismissing the case.[7] Again, Debtors did not file a plan, and the case was on track to be dismissed.

Over the course of their case, Debtors paid a total of $10,080 in pre-confirmation payments, pursuant to § 1326(a)(1) and the Court's Order, to the Trustee, who, in turn, disbursed $6,483.98 to Debtors' secured creditors.[8] This left the Trustee with $3,596.02 remaining, including his fees in the amount of $806.40 (the "Funds"), that the Trustee would need to dispense with when the case was, ultimately, dismissed.[9]

Counsel filed a notice of attorney's lien pursuant to Kan. Stat. Ann. § 7-108, asserting a lien against the Funds for his claimed fees and costs for pre- and post-petition services in the amount of $4,376.95.[10] Together with the notice, Counsel filed an application for return of the Funds in which he requested the Trustee, at the time of dismissal, disburse the Funds to him, as the authorized representative of Debtors, so that Counsel may obtain payment for his fees, or, in the alternative, to Debtors with a notation of

---

[7] Doc. 28.
[8] Doc. 37. The parties did not specify when Debtors stopped making plan payments to the Trustee.
[9] Doc. 37. The Trustee paid $313 to the Clerk of the Bankruptcy Court for the Chapter 13 filing fees and made the following adequate protection payments: $323.62 to Nebraska Furniture Mart (Claim #5); $1,944.68 to Exeter Finance (Claim #20), and $3,902.68 to Chrysler Capital c/o Santander Consumer (Claim #9). *Id.* at 1 ¶ d.
[10] Doc. 29. The basis for Counsel's lien is a written fee agreement with Debtors that, he argues, entitles him to assert a lien on the Funds. The fee agreement was not attached to Counsel's notice or application.

4

Counsel's lien on the negotiable instrument.[11] Either option, Counsel asserts, would "maintain fidelity to *Doll*" because the Funds would be returned to Debtors' control.[12] Counsel refers to *Goodman v. Doll (In re Doll)*,[13] wherein the Tenth Circuit held a Chapter 13 trustee was not entitled to deduct their statutory trustee's fees as set by 28 U.S.C. § 586(e) from pre-confirmation funds returned to a debtor, because the plain language of § 1326(a)(2), read together with § 586(e), required the trustee to return all pre-confirmation payments to the debtor without deducting the trustee's fees if the plan is not confirmed.[14]

The Trustee objected, arguing Counsel's request was contrary to *In re Doll*, which, the Trustee asserted, required him to disburse the Funds to Debtors.[15] Debtors filed a pro se letter objection, asking the Court to deny Counsel's request and disburse the Funds to them so they could become current on their car payments when the case was dismissed.[16] Debtors indicated they would like to work directly with Counsel outside of the

---

[11] Doc. 30.
[12] *Id.* ¶ 10.
[13] 57 F.4th 1129 (10th Cir. 2023), *cert. denied sub nom.* 144 S. Ct. 1001, 218 L. Ed. 2d 20 (2024).
[14] *Id.* at 1141.
[15] Doc. 33.
[16] Doc. 35.

5

bankruptcy proceedings to pay his outstanding fees as "[they] were never given that option to do so."[17]

At the hearing on Counsel's notice and application, the Court allowed the parties to submit briefs addressing the following issues: (1) does Counsel have a lien, and (2) did the lien attach to the Funds held in the Trustee's possession.[18] Counsel did not file a brief in support of his position.

In the Trustee's brief in support of his objection, the Trustee argues Counsel has not obtained this Court's approval of any fees and expenses, and without that approval, Counsel does not have a "general balance of compensation" that would allow him to assert an attorney's lien under K.S.A. § 7-108 on the Funds.[19] Further, because Counsel does not have an allowed claim under § 503(b), the Trustee argues *In re Doll* and § 1326(a)(2) require the Trustee to disburse the Funds to Debtors, not Counsel.

## II.  Analysis

As a preliminary matter, this is a core proceeding involving matters concerning the administration of the estate and to determine the validity,

---

[17] *Id.*
[18] Doc. 34.
[19] Doc. 37.

6

extent, or priority of liens, which arises under title 11, over which this Court has subject matter jurisdiction.[20] Venue is proper in this District.[21]

Section 1326(a)(1) requires the debtor to commence plan payments no later than thirty days after the date the plan is filed or the order for relief, whichever is earlier.[22] Those payments "shall be retained by the trustee until confirmation or denial of confirmation."[23] If the plan is confirmed, § 1326(a)(2) instructs the trustee to distribute any payment in accordance with the plan as soon as practicable. If, however, the plan is not confirmed:

> [T]he trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) [regarding modifications to payments pending confirmation of a plan] to the debtor, after deducting any unpaid claim allowed under section 503(b).[24]

As relevant here, § 503(b)(2) permits the "compensation and reimbursement awarded under section 330(a)" as an allowed administrative expense. In turn, § 330(a)(4)(B) permits, after notice and a hearing, "reasonable compensation to the debtor's attorney [in a Chapter 13 bankruptcy] for representing the interests of the debtor in connection with

---

[20] 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(A), and (b)(2)(K) and Amended Order of Reference, D. Kan. S.O. 13-1.
[21] 28 U.S.C. § 1409(a).
[22] 11 U.S.C. § 1326(a)(1).
[23] *Id.* § 1326(a)(2).
[24] *Id.*

7

the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."[25]

Section 1326(a)(2), therefore, read together with §§ 503(b) and 330(a), clearly provides a "road map to a Chapter 13 debtor's attorney seeking payment from the trustee" and "after compliance with the application and allowance process envisioned by Section 503(a), the attorney can be paid from the undistributed funds held by the Chapter 13 Trustee."[26]

Rather than following the defined road map set forth in § 1326(a)(2), Counsel chose to assert an attorney's lien under Kan. Stat. Ann. § 7-108, which provides:

> An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; such notice must

---

[25] 11 U.S.C. §§ 503(b)(2), 330(a)(4)(B). The other factors the Court may consider in determining the reasonableness and necessity of the charged services include—but are not limited to—the time spent on services, the rates charged, and whether the compensation is reasonable based on "comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(A)-(F).
[26] *In re Harris*, 258 B.R. 8, 11 (Bankr. D. Idaho 2000); *see also In re Rogers*, 519 B.R. 267, 272 (Bankr. E.D. Ark. 2014) ("In the event of dismissal, an attorney is fully protected [under § 1326(a)(2)] … if the attorney files a timely application under section 503(b).").

8

> be in writing, and may be served in the same manner
> as a summons[.][27]

The Kansas Supreme Court interprets § 7-108 to provide for two liens an attorney can claim: a charging lien and a retaining lien.[28] Counsel claims a charging lien, defined as an "an equitable right to have the fees and costs due the lawyer for his services secured to him out of the judgment."[29] Under Kansas law, a charging lien generally attaches "at the point in time the lien was filed and notice given to the party holding the client's property or funds."[30] If the lien is perfected, the attorney would have priority over other claimants and "when [the attorney] perfected his lien he could not be disconnected from it, so far as his lien was concerned, by anything his client or his client's adversary might do."[31]

In accordance with Kansas law, Counsel's lien attached when he filed notice of attorney's lien on December 9, 2024, as this put the Trustee on

---

[27] Kan. Stat. Ann. § 7-108.
[28] *Ahalt v. Gatewood*, 109 Kan. 328, 328, 198 P. 970, 971 (Kan. 1921) (interpreting an earlier version of Kan. Stat. Ann. § 7-108 that is nearly identical to the current version of the statute). As Counsel does not have the funds in his possession, he cannot assert a retaining lien. The Kansas Supreme Court defines a retaining lien as "an attorney's right to retain possession of all papers and money of his client coming into his hands professionally until a general balance due him for services is paid." *Id.*; *see also In re Hodes*, 239 B.R. 239, 243 (Bankr. D. Kan. 1999), *aff'd in part, rev'd in part*, 289 B.R. 5 (D. Kan. 2003) (citing same).
[29] *Nazar v. Allstate Ins. Co. (In re Veazey)*, 272 B.R. 486, 490 (Bankr. D. Kan. 2002) (quoting *Ahalt*, 109 Kan. at 328).
[30] *Carter v. Dunham*, 104 Kan. 59, 177 P. 533, 534 (Kan. 1919).
[31] *In re Veazey*, 272 B.R. at 490–91 (quoting *Carter*, 177 P. at 534).

9

notice of the claimed lien.[32] Although the parties do not raise the issue,[33] Counsel, in filing notice, perfected his lien in violation of the automatic stay, which was and is still in effect[34] and explicitly prohibits "any acts to create, perfect, or enforce any lien against property of the estate."[35] Further, there is no applicable exception to the stay that would allow Counsel to perfect a pre-petition interest post-petition as charging liens "do not relate back to a date

---

[32] Although a charging lien is generally perfected by notice, it may also be perfected without notice *if* the party holding the client's property or funds has knowledge of the claim, or "has notice of facts sufficient to put a prudent person upon inquiry." *Ahalt*, 198 P. at 971. In the absence of any evidence or argument suggesting the Trustee had knowledge of the lien before the notice was filed, the Court assumes the filing date of the notice is the perfection date.

[33] The Court, sua sponte, raises the issue of whether Counsel's lien violates the automatic stay in accordance with its powers under § 105(a), which allow it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules[.]" 11 U.S.C. § 105(a); *see generally Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1263 (10th Cir. 2008) (discussing a bankruptcy court's § 105(a) powers).

[34] The automatic stay "continues until the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) … the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(A)–(C).

[35] *Id.* § 362(a)(4); *see also In re Veazy*, 272 B.R. at 490 (finding the attorney's lien to be void because the notice of the lien was an act to perfect that violated the automatic stay).

10

prior to perfection."[36] Therefore, Counsel's lien is void for violating the automatic stay.[37]

Even if the lien is not void, Counsel is not entitled to assert a lien on the Funds in the amount requested because his fees and costs have not been approved by the Court nor has Counsel sought approval of the same. Debtors' plan provided for payment of fees, but that plan was not confirmed. Counsel has not filed an application for compensation. Until the Court scrutinizes and approves the amount of fees requested in accordance with § 330(a)(4), Counsel has not "actually 'earned'" his fees under the Code.[38] To hold otherwise "would render meaningless the statutory scheme provided in the

---

[36] *In re Veazey*, 272 B.R. at 491 ("Kansas attorney's charging liens are only effective after notice of the attorney's claim lien is served on the adverse party, and do not relate back to a date prior to perfection."); Kan. Stat. Ann. § 7-108 (the lien is effective "from the time of giving notice of the lien to the party"). Concern about violating the automatic stay is another reason to follow the plain language of § 1326(a)(2) and file an application for allowance of administrative fees under § 503(b).

[37] *See Kan. Dep't of Labor v. Boyd (In re Boyd)*, 563 B.R. 62, 65 (Bankr. D. Kan. 2016) ("Actions taken in violation of the automatic stay are void and without effect.") (citing *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940); *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990); *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990)).

[38] *Rajala v. Hodes (In re Hodes)*, 289 B.R. 5, 17 (D. Kan. 2003); *see also In re Merovich*, 547 B.R. 643, 649 (Bankr. M.D. Pa. 2016) (holding a bankruptcy judge has an "independent duty to review the reasonableness of a requested fee"); *see generally In re Garris*, 496 B.R. 343, 353–54 (Bankr. S.D.N.Y. 2013) (holding the Revision Notes to § 330 "underscore that 'fees are not a matter for private agreement' in bankruptcy cases due to the public-interest concerns inherent in the award of such fees") (quoting *In re 5900 Ass'n, L.L.C.*, 326 B.R. 402, 409 (E.D. Mich. 2005)) (internal citations omitted).

11

Code, the protections the Code affords the debtor and his attorney, and this court's ability to scrutinize and award compensation to attorneys[.]"[39]

Because the Court finds that Counsel's lien is inadequate, the Court will not decide whether Counsel's proposed options (i.e., disbursing the Funds to him as an authorized representative or disbursing to Debtors with a notation of the lien) comply with § 1326(a)(2) and the Tenth Circuit's opinion in *In re Doll*.

### III. Conclusion

For the reasons discussed above, the Court denies Counsel's application as filed.[40] Within fifteen days from the date of this Order, Counsel may file an application for compensation that satisfies the requirements of §§ 330(a) and 503(a), as contemplated by § 1326(a)(2). Until the Court orders otherwise, the pre-confirmation funds held by the Trustee shall remain with the Trustee. If administrative claims are allowed in accordance with § 503(b), they should be deducted from the pre-confirmation funds held by the Trustee and then the remaining funds, if any, should be returned to Debtors in accordance with § 1326(a)(2).

**It is so ordered.**

# # #

---

[39] *In re Rogers*, 519 B.R. at 274.
[40] Doc. 30.